UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| W. MITT ROMNEY, in his official capacity as Governor of the Commonwealth of Massachusetts,<br><br>Plaintiff,<br><br>v.<br><br>DONALD H. RUMSFELD, in his official capacity as Secretary of Defense of the United States of America,<br><br>THE DEFENSE BASE CLOSURE AND REALIGNMENT COMMISSION,<br><br>ANTHONY J. PRINCIPI, in his official capacity as Chairman of the Defense Base Closure and Realignment Commission,  and<br><br>JAMES H. BILBRAY, PHILIP COYLE, HAROLD W. GEHMAN, JR., JAMES V. VINSON, JAMES T. HILL, LLOYD W. NEWTON, SAMUEL K. SKINNER, and SUE E. TURNER, in their official capacities as members of the Defense Base Closure and Realignment Commission,<br><br>Defendants. | CIVIL ACTION<br>NO. 05-CV- |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
## MOTION FOR TEMPORARY RESTRAINING ORDER

### STATEMENT OF THE CASE

### Introduction and Grounds for Temporary Relief

The complaint in this case arises from actions of the Department of Defense and the

Defense Base Closure and Realignment Commission ("BRAC Commission") recommending the

closure of Otis Air National Guard Base in Barnstable, Massachusetts, the movement of F-15 aircraft from Otis ANGB to Barnes Air National Guard Base in Westfield, Massachusetts, and the movement of 15 A-10 aircraft from Barnes to other States, without seeking or obtaining the approval of the Governor of the Commonwealth of Massachusetts. Plaintiff W. Mitt Romney, Governor of Massachusetts, claims that the actions of the Department and the BRAC Commission violate federal law requiring his consent. He seeks temporary, preliminary, and permanent declaratory and injunctive relief.

The Governor has moved the Court to enter a temporary restraining order enjoining the defendants, pending a final hearing and decision of this Court on all of plaintiff's claims and until further order of the Court, from transmitting a final report to the President of the United States, due on September 8, 2005, pursuant to the Base Closure and Realignment Act of 1990, 104 Stat. 1808, as amended, note following 10 U.S.C. § 2687 (West 1998, 2005 Supp.) (the "BRAC Act"), that includes the recommendations cited above. As grounds for his motion the Governor states in summary:

1. The Governor is likely to prevail on his claim that the defendants Secretary and the Commission are prohibited by the United States Constitution, Article I, § 8, cl. 16, and 32 U.S.C. § 104, and 10 U.S.C. § 18238, from recommending the actions described above without his consent. See Rendell v. Rumsfeld, 2005 WL 2050295 (E.D. Pa. August 26, 2005) (No. CV-05-3563); Rell v. Rumsfeld, No. 3:05CV1363-AVC (D. Conn. August 30, 2005) (order granting plaintiff Governor of Connecticut's application for temporary restraining order; hearing on motion for preliminary injunction scheduled for Wednesday, September 7, 2005); but see Blagojevich v. Rumsfeld, C.A. No. 05-3190 (C.D. Ill. September 6, 2005) (denying injunctive

2

relief and dismissing complaint of Governor of Illinois).

2. Permitting the transmittal of the above-cited recommendations of the Commission will result in irreparable injury to the Governor by nullifying his right under federal law to withhold his consent to changes in the allotment or organization of the Massachusetts Air National Guard, deprive him of a vital homeland security asset, degrade his ability to defend the security of the citizens of the Commonwealth, and deter enlistment and re-enlistment in the Guard. Permitting transmittal will further cause irreparable harm because, absent a temporary restraining order, and after action by the President on or before September 23, 2005, judicial review of the report of the Commission may be contested by the United States under Dalton v. Specter, 511 U.S. 462 (1994).

3. The public interest would be furthered by an injunction. An order temporarily enjoining transmittal of the Commission report would advance principles of federalism reflected by the federal constitution and laws expressly or impliedly requiring consent of the Governor to the closure and movement of aircraft described in the complaint.

For these reasons and those stated below, the Court should grant plaintiff's motion for a temporary restraining order.

**Statement of Facts**

Factual statements set forth below are supported by the Affidavit of Brigadier General Samuel Shiver submitted herewith. Plaintiff W. Mitt Romney (the Governor) is the duly elected Governor of the Commonwealth of Massachusetts (the Commonwealth). The Governor is the "commander-in-chief" of the "military forces" of the Commonwealth and has the power under its

3

constitution "to assemble the whole or any part of them for training, instruction or parade, and to employ them for the suppression of rebellion, the repelling of invasion, and the enforcement of the laws." Massachusetts Constitution Pt. 2, c. 2, § 1, art. 7. Governor Romney is the commander-in-chief of the Massachusetts National Guard.

### 1. The Recommendations of the Secretary

The Base Closure and Realignment Act of 1990, 104 Stat. 1808, as amended, note following 10 U.S.C. § 2687 (West 1998, 2005 Supp.) (the "BRAC Act") sets forth the process by which military bases in the United States and its territories are identified for closure or realignment. Pursuant to the BRAC Act, defendant Secretary of Defense Rumsfeld ("Secretary Rumsfeld") is authorized to make recommendations for the closure and realignment of military bases in the United States to the defendant Base Closure and Realignment Commission ("BRAC Commission"). He is also authorized to oversee, direct, and implement the closure or realignment of military bases pursuant to the BRAC process.

On May 13, 2005, Secretary Rumsfeld transmitted to the Defense Base Closure and Realignment Commission ("BRAC Commission") the Department of Defense Base Closure and Realignment Report ("BRAC DoD Report"). The BRAC DoD Report was prepared by the Department pursuant to the BRAC Act. The BRAC DoD Report contains the Department's recommendations to realign or close military installations within the United States and its territories. While preparing its BRAC DoD Report, the Department considered the requirements of installations used by the Air National Guard of the United States.

The Secretary recommended closure of Otis Air National Guard Base (Otis ANGB) and the distribution of its fifteen F-15 Primary Assigned Aircraft (PAA) of the 102d Fighter Wing to

4

Air Guard Stations in Florida and New Jersey.

## 2. The BRAC Commission Report and Action by the President and Congress

Pursuant to Section 2914(d)(1) of the BRAC Act, the BRAC must transmit its report, "containing its findings and conclusions based on a review and analysis of the Secretary's recommendations," to the President by September 8, 2005. Id. The President has until September 23, 2005, to review the recommendations of the Secretary and the Commission and prepare a report containing his approval or disapproval of the Commission's recommendations in their entirety. Id. § 2914 (e)(1). If the President disapproves the Commission's recommendations, the Commission may prepare a revised list of recommendations and transmit those to the President by October 20, 2005. If the President disapproves the revised recommendations, the 2005 BRAC process is terminated. Id. § 2914 (e)(3). If the President approves either the original or revised recommendations, he must send the approved list and a certification of approval to Congress. Id. § 2903 (e). If Congress does not enact a resolution disapproving the approved recommendations in their entirety within 45 days after receiving the President's certification of approval, the Secretary must carry out all of the recommendations. Id. § 2904 (a).

In each of the four previous BRAC processes – occurring in 1988, 1991, 1993, and 1995– the President approved the BRAC Commission's recommendations in their entirety. Congress has never disapproved the President's base closure and realignment decisions.

On August 26, 2005, the BRAC announced that its report to the President will recommend that (1) Otis ANGB be closed, (2) the 102nd Fighter Wing's fifteen F-15 PAA be transferred to Barnes Air National Guard Base in Westfield, Massachusetts; and (3) the 104th

5

Fighter Wing's 15 A-10 Aircraft be moved from Barnes ANGB to other States.

### 3. Otis and Barnes ANGB

Otis ANGB is located in Barnstable, Massachusetts, within the Massachusetts Military Reservation and wholly within the Commonwealth. Approximately 1000 military positions are currently allotted to the 102d Fighter Wing at Otis NGB. Approximately 1000 military positions are currently allotted to the 104th Fighter Wing as Barnes ANGB. A substantial number of the members of these wings have combat and homeland defense experience. The 102nd and 104th Fighter Wings constitute a well-trained, mission-ready state military force available to the Governor to perform state activity duty missions dealing with homeland security, natural disasters and other state missions.

The closure of Otis ANGB and the movement of the fifteen A-10 aircraft of the 104th Fighter Wing at Barnes ANGB and related actions will deprive the Governor of a significant amount of the total strength of the Massachusetts Air National Guard and will reduce the strength of Massachusetts military forces. These actions will deprive the Governor and the Commonwealth of a key joint base of operations possessing current and future military capabilities for homeland security missions throughout the Northeast United States.

Otis ANGB and the 104th Fighter Wing at Barnes ANGB are organized as units of the Massachusetts Air National Guard (state) and Air Combat Command (federal). The recommendations of the BRAC Commission regarding Otis and Barnes, if implemented, would constitute a change in the branch, organization or allotment of the units.

In May 2005 and at all times subsequent to Secretary Rumsfeld's transmittal of the BRAC DoD Report to the BRAC Commission and the BRAC Commission's recommendations

6

regarding Otis ANGB and Barnes ANGB, more than half of the forces there were not and currently are not in active federal service.

At no time during the 2005 BRAC process has Secretary Rumsfeld requested or obtained the approval of Governor Romney or his authorized representatives to withdraw or change the branch, organization or allotment of the units of the Massachusetts Air National at issue. At no time during the 2005 BRAC process has any authorized representative of Secretary Rumsfeld, the Department, or the BRAC Commission requested or obtained the approval of Governor Romney or his authorized representatives to withdraw or change the branch, organization or allotment of the units of the Massachusetts ANG at issue.

On September 1, 2005, Governor Romney sent a letter to Secretary Rumsfeld and Chairman Principi stating that he has not consented to the closure of Otis ANGB or the reassignment of the aircraft of the 102nd or 104th Fighter Wings. A copy of Governor Romney's letter is attached to the complaint as Exhibit A.

### 4.   **The National Guard**

The operation of the Massachusetts National Guard is primarily governed by Massachusetts Constitution, Pt. 2, c. 2, § 1, art. 7, and Mass. Gen. Laws c. 33. "The National Guard is the modern Militia reserved to the States by Art. I, s 8, cl. 15, 16, of the Constitution." Maryland ex rel. Levin v. United States, 381 U.S. 41, 46 (1965), vacated on other grounds, 382 U.S. 159 (1965). The decision of the United States District Court for the Eastern District of Pennsylvania in Rendell v. Rumsfeld, 2005 WL 2050295 (E.D. Pa. August 26, 2005) (No. CV-05-3563), contains a description of the historical development of the National Guard and current laws governing its operation.

7

## ARGUMENT

Pursuant to Fed. R. Civ. P. 65, the Court may grant a temporary restraining order or

preliminary injunction if the moving party demonstrates a reasonable likelihood of success on

the merits of his claims, and that, absent relief, he will suffer irreparable harm, and the public

interest would be adversely affected by the denial of relief.

### I.   THE GOVERNOR IS LIKELY TO PREVAIL ON THE MERITS.

The Governor is likely to prevail on the merits of his federal claims under the Militia

Clause, Art. 1, § 8, cl. 16, 32 U.S.C. § 104(c), and 18 U.S.C. § 18238. Regarding the second

claim, Title 32 U.S.C. § 104(c) provides:

> To secure a force the units of which when combined will form
> complete higher tactical units, the President may designate the
> units of the National Guard, by branch of the Army or organization
> of the Air Force, to be maintained in each State and Territory,
> Puerto Rico, and the District of Columbia. However, no change in
> the branch, organization, or allotment of a unit located entirely
> within a State may be made without the approval of the state's
> governor.

The District Court in Pennsylvania held that Section 104(c) requires the consent of the Governor

for the deactivation of the 111th Fighter Wing there. See Rendell v. Rumsfeld, 2005 WL

2050295 (E.D. Pa. August 26, 2005) (No. CV-05-3563). The opinion in the Pennsylvania case

demonstrates that the Governor is likely to prevail on the merits of his claim under Section

104(c) here. For the reasons stated in the Pennsylvania opinion, the actions to be recommend by

the BRAC Commission regarding the Massachusetts ANG would be changes in the branch,

organization, or allotment of these units requiring the consent of the Governor. The Court should

reject defendants' anticipated argument that if Section 104(c) is read to apply to the BRAC

8

Commission's recommendation in this case, it conflicts with the BRAC Act and is, therefore,

impliedly repealed by it. The BRAC Act does not specifically address actions regarding the

National Guard and both statutes may be given effect if the duty to obtain gubernatorial consent

is preserved.

The Governor is also likely to prevail on his claim under the Militia Clause.[1] The Armies

Clause of the United States Constitution provides:

> The Congress shall have the power . . .
>
> [12] To raise and support Armies.

U.S Const. Art. 1, § 8, cl. 12. The Commander-in-Chief Clause provides that the President

> shall be Commander in Chief of the Army and Navy of the United
> States, and of the Militia of the several States, when called into the
> actual Service of the United States.

U.S. Const. Art. II, § 2.

The Militia Clauses of the United States Constitution authorize Congress to:

> provide for calling forth the Militia to execute the laws of the
> Union, suppress Insurrections and repel Invasions  (Art. I, § 8, cl.
> 15), and

_____

[1]     The Governor reserves for future briefing his argument under Title 18 U.S.C.
§ 18238, which provides:

> A unit of the Army National Guard of the United States or the Air
> National Guard of the United States may not be relocated or
> withdrawn under this chapter without the consent of the governor
> of the State or, in the case of the District of Columbia, the
> commanding general of the National Guard of the District of
> Columbia.

The District Court in Pennsylvania rejected the State's claim under this section.

> provide for organizing, arming, and disciplining, the Militia, and
> for governing such Part of them as may be employed in the service
> of the United States, reserving to the States respectively, the
> Appointment of the Officers, and the Authority of training the
> Militia according to the discipline prescribed by Congress. Art. I,
> § 8, cl. 16.

"The National Guard is the modern Militia reserved to the States by Art. I, § 8, cl. 15, 16, of the Constitution." Maryland ex rel. Levin v. United States, 381 U.S. 41, 46 (1965), vacated on other grounds, 382 U.S. 159 (1965). Given the dual nature of the militia and its history, see Rendell v. Rumsfeld, the Clause implies a requirement of consent for a closure or material change at bases such as Otis and Barnes. The history of the Militia Clause supports the view that the Framers intended to reserve to the States their traditional power over the militias, absent federal activation by the President. Closure or a material change of an ANG base destroys the States' "prepondering influence over the militia," contrary to the Framers intent. See Federalist No. 29 (Hamilton). Federal control of this type should be limited to cases in which the President has federally activated the base or unit in question.

Perpich v. Dep't of Defense, 496 U.S. 334, 342 (1990), does not control this claim. Perpich rejected a claim by Minnesota that Congress could not federalize the National Guard for the purpose of training the Guard outside of the United States. In Perpich, however, only the legitimacy of the federalization and assignment were contested. There was no dispute that the entire relevant unit of the Minnesota National Guard had been activated. Here, in the absence of full activation of Otis and the unit at issue at Barnes, the Militia Clause implies a requirement of the consent of the state commander-in-chief prior to action.

10

## II.     PLAINTIFF AND THE PUBLIC INTEREST WILL SUFFER
##          IRREPARABLE HARM IF A TEMPORARY RESTRAINING ORDER IS
##          NOT GRANTED.

Pursuant to the military base closure and realignment process set forth in the BRAC Act,

Secretary Rumsfeld has finally and completely fulfilled his obligation to make recommendations

with respect to the 2005 round of realignments and closure of military installations. No further

action by the Secretary or the Department is required before Otis ANGB is closed and the fifteen

A-10 aircraft are ordered moved. Pursuant to the military base closure and realignment process

set forth in the BRAC Act, the BRAC Commission has finally and completely fulfilled its

reporting requirements with respect to the 2005 round of realignments and closure of military

installations, save for its duty to transmit its report to the President by September 8, 2005. No

further action by the BRAC Commission is required before Otis ANGB is closed and the fifteen

A-10 aircraft are moved. The Governor's right to withhold consent to action to close, relocate,

realign, withdraw, deactivate, or change the branch, organization or allotment of Otis ANGB and

the 15 A-10 aircraft at Barnes ANGB has been nullified by the recommendations of the Secretary

and the BRAC Commission.

Neither the President nor Congress may remove Otis and Barnes ANGB from the list of

recommended closures and realignments unless they reject the BRAC Commission's

recommendations in their entirety. Furthermore, it would be historically unprecedented for the

President or Congress to reject an entire slate of closure and realignment recommendations.

Moreover, as described above, the closure and realignment recommendations will become law

within 45 legislative days after the President approves them and the President must act by

11

September 23, 2005.

Absent a temporary restraining order, the harm as alleged herein will be irreparable. The recommendations of the Commission would nullify the power of the Governor to withhold his consent, deprive him of a vital homeland security asset, degrade his ability to defend the security of the citizens of the Commonwealth, and deter enlistments and re-enlistments in the Massachusetts Air National Guard. Absent a temporary restraining order, and after action by the President on or before September 23, 2005, judicial review of the report of the Commission may be contested by the United States under Dalton v. Specter, 511 U.S. 462 (1994). For example, in Rendell v. Rumsfeld, supra, the District Court noted that the Secretary had argued that once the BRAC Commission's recommendations are sent to the President, they will become unreviewable pursuant to Dalton v. Specter. Rendell, slip op. at 30 n.12. The court held, therefore, that the Secretary's recommendation regarding the 111th Fighter Wing in Pennsylvania would cause irreparable injury if not challenged prior to the submission of the Commission's report to the President. Id. at 32. While plaintiff does not concede that further judicial review is not possible once the Commission submits its report, the Governor and the public interest may suffer irreparable injury if this Court should later find that further review is not possible. See, e.g., Blagojevich v. Rumsfeld, C.A. No. 05-3190 (C.D. Ill. September 6, 2005) (denying injunctive relief and dismissing complaint of Governor of Illinois).

## CONCLUSION

For the reasons stated above, the Court should grant the Governor's motion for a

temporary restraining order.

W. MITT ROMNEY
GOVERNOR OF THE
COMMONWEALTH OF MASSACHUSETTS

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

David R. Kerrigan, BBO # 550843
Thomas A. Barnico, BBO # 030040
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2050, 3380

Dated: September 7, 2005

> **CERTIFICATE OF SERVICE**
>
> I hereby certify that a true copy of the above
> document was served upon the attorney of
> record for each other party by mail (by hand)
> on September 7, 2005.

13