# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| W. MITT ROMNEY, in his official capacity as Governor of the Commonwealth of Massachusetts, | ) ) ) | |
| | ) | Civil Action No. 05-11821 GAO |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DONALD H. RUMSFELD, in his official capacity as Secretary of Defense of the United States of America, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' NOTICE OF RECENT DECISIONS

Defendants Donald H. Rumsfeld, et al., hereby provide notice to the Court of the recent decisions of the United States District Courts for the Eastern District of Missouri in State of Missouri v. Rumsfeld, No. 4:05CV1387 JCH, slip op. at 3-6 (E.D. Mo. Sept. 7, 2005) (attached hereto as Exhibit 1); the United States District Court for the District of New Jersey in Corzine v. 2005 Defense Base Closure & Realignment Comm'n, Civil Action No. 05-4294 (MLC), slip op. at 6-10 (D.N.J. Sept. 6, 2005) (attached hereto as Exhibit 2); and the United States District Court for the Central District of Illinois in Blagojevich v. Rumsfeld, No. 05-3190, slip op. at 5-10 (C.D. Ill. Sept. 6, 2005) (attached hereto as Exhibit 3).  Each of these courts have held that the federal courts lack subject matter jurisdiction to enjoin the Defense Base Closure and Realignment Commission from transmitting its report on the Secretary of Defense's initial recommendation to the President of the United States of America on September 8, 2005, pursuant to the Defense Base Closure and Realignment Commission Act (the "Act" or "BRAC Act"), see 10 U.S.C. § 2687 note.  In addition, both the district courts for the Eastern District of Missouri and the Central District of Illinois have

noted their specific disagreement with the contrary decision reached in Rendell v. Rumsfeld, 2005

WL 2050295 (E.D. Pa. Aug. 26, 2005).  See State of Missouri, No. 4:05CV1387 JCH, slip op. at 5

n.3 ("Plaintiff relies on the opinion in Rendell.  Having carefully reviewed that decision, the Court

respectfully disagrees with its analysis."); Blagojevich, No. 05-3190, slip op. at 5-10 ("This Court

has reviewed the Rendell decision and respectfully disagrees with its interpretation of the Supreme

Court's opinion in Dalton.  This Court is convinced that the Dalton case dictates the conclusion that

these preliminary recommendations by the Secretary and the Commission do not cause injury to the

Governor.").

                         Respectfully submitted,

                         MICHAEL J. SULLIVAN
                         United States Attorney

By:  /s/ Mark T. Quinlivan
                         MARK T. QUINLIVAN
                         Assistant United States Attorney
                         John Joseph Moakley U.S. Courthouse
                         1 Courthouse Way, Suite 9200
                         Boston, MA 02210
                         617-748-3606

Dated: September 7, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI, ex rel., ) | |
| JEREMIAH W. (JAY) NIXON, ) | |
| Attorney General of the State of Missouri, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV01387 JCH |
| ) | |
| DONALD H. RUMSFELD, in his official ) | |
| capacity as Secretary of Defense of the ) | |
| United States; ANTHONY J. PRINCIPI, ) | |
| in his official capacity as Chairman of the ) | |
| Defense Base Closure and Realignment ) | |
| Commission; JAMES H. BILBRAY; ) | |
| PHILIP E. COYLE; HAROLD W. ) | |
| GEHMAN, JR.; JAMES V. HANSEN; ) | |
| JAMES T. HILL; LLOYD W. NEWTON; ) | |
| SAMUEL K. SKINNER; and SUE ELLEN ) | |
| TURNER, in their official capacity as ) | |
| members of the Defense Base Closure and ) | |
| Realignment Commission, ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction.  On August

26, 2005, the Defense Base Closure and Realignment Commission (the "BRAC Commission" or

"Commission") recommended the realignment of the 131st Fighter Wing of the Missouri Air National

Guard.  Plaintiff seeks to enjoin the BRAC Commission from including this recommendation in its final

report and recommendation to be sent to the President on September 8, 2005, on the basis  that the

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Federal Government cannot realign an installation of Missouri's State National Guard without obtaining the governor's consent, pursuant to 10 U.S.C. § 18238 and 32 U.S.C. § 104(c).[1]

## I.  BACKGROUND[2]

The BRAC Commission was created by Congress with the Base Closure and Realignment Act of 1990, 104 Stat. 1808, as amended, note following 10 U.S.C. § 2687 (the "BRAC Act"). The Secretary of Defense provides the Commission with a list of military installations that the Department of Defense recommends for closure or realignment. The Commission then evaluates these recommendations, makes changes it deems necessary, and submits its final report and recommendation to the President. The President may either approve or disapprove the report as a whole.  If the President approves the report, it is sent to Congress.  If the President disapproves the report, the Commission must prepare a new report and submit it to the President. If the President disapproves the new report, the process is over and none of the Commission's recommended actions will occur.  If either the initial or a resubmitted report is sent to Congress, Congress must enact a resolution approving or disapproving the report as a whole. If Congress does not disapprove the report within 45 days, the Secretary of Defense is required to act on the recommendations. BRAC Act §§ 2912-14.

––––––––––––––––––––

[1] In its Complaint, Plaintiff alleges that I) the recommendation is outside the scope of the BRAC Commission's statutory authority, II) the recommended action is outside of the powers of the Federal Government, III) the recommended action violates the Militia Clause of the United States Constitution, and IV) the  recommended action violates 10 U.S.C. § 18235(b)(1).

[2] For an in depth discussion of the history of the National Guard and the BRAC Commission, see Rendell v. Rumsfeld, A.05-CV-3563, slip op. at 2-7, 2005 WL 2050295 (E.D.Pa. Aug 26, 2005).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On May 13, 2005, Secretary of Defense Rumsfeld sent the Department of Defense Base Closure and Realignment Report ("DOD Report") to the BRAC Commission.  The DOD Report recommended the realignment of the 131st Fighter Wing. (Joint Stipulation ¶ 2).  On August 26, 2005, the BRAC Commission modified the DOD Report's recommendation regarding the 131st Fighter Wing.  (Joint Stipulation ¶ 3).  On August 26, 2005, Plaintiff filed the Complaint in the instant suit. (Complaint, Doc. No. 1). On September 1, 2005, Plaintiff moved for a Preliminary Injunction, and to expedite consideration of the Motion for Preliminary Injunction.

## II.  ANALYSIS

The Court must first determine whether it has subject matter jurisdiction in this case.  The Court has jurisdiction only over cases and controversies.  U.S. Const. art. III, § 2. Plaintiff alleges that the matter is ripe for review because Secretary Rumsfeld "has finally and completely fulfilled his reporting requirements with respect to the 2005 round of alignments and closures to military installations" and because the BRAC Commission "adopted the Secretary's recommendations relating to the 131st Fighter Wing and only the ministerial act of delivering the response to the President remains." (Complaint ¶¶ 47, 48).

The Eighth Circuit has stated that "[t]he ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." Pub. Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, 345 F.3d 570, 572 (8th Cir. 2003) quoting Nebraska Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000) (internal quotation marks omitted).  The ripeness inquiry requires a court to examine both "the fitness of the issues for judicial decision and the hardship to

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the parties of withholding court consideration." <u>Pub. Water Supply Dist.</u>, 345 F.3d at 572-73,

<u>quoting</u> <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148 (1967).  A party seeking judicial relief must

satisfy both the fitness for judicial decision prong and the hardship prong. <u>Pub. Water Supply Dist.</u>,

345 F.3d at 573.

      The fitness prong implicates the court's ability to determine whether a case would benefit

from further factual development.  A case is more apt to be ripe if it is not contingent on future

possibilities.  <u>Id</u>.  To satisfy the hardship prong, a plaintiff must allege more than abstract injury.  It

must allege that it has sustained or is in immediate danger of sustaining a direct injury resulting

from the challenged official conduct.  <u>Id</u>.  Plaintiff has failed to meet either prong. The report of

Secretary Rumsfeld and the report and recommendation of the Comission are preliminary actions

contingent on future possibilities.  The President and Congress may approve or may disapprove the

action of the Commission.  Thus, it is premature to determine what, if any, effect their actions may

have on Plaintiff.  Moreoever, until the decisionmaking process is complete and contingencies

regarding what action the President and Congress may take are removed, any alleged injury to

Plaintiff is speculative.  Plaintiff's claims are therefore not ripe for judicial review.

      This conclusion is also compelled by the Supreme Court's decision in <u>Dalton v. Specter</u>,

511 U.S. 462 (1994).  In <u>Dalton</u>, which involved a challenge to the President's approval of the

1991 BRAC Commission's recommendations to close a naval shipyard, the Supreme Court ruled

that:

      The reports submitted by the Secretary and the Commission . . . carr[y] no direct

      consequences for base closings.  The action that will directly affect the military bases is

      taken by the President, when he submits his certification of approval to Congress.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly, the Secretary's and Commission's reports serve more like a tentative

recommendation than a final and binding determination. The reports are, like the ruling of

a subordinate official, not final and therefore not subject to review.

Dalton, 511 U.S. at 469-70, quoting Franklin v. Massachusetts, 505 U.S. 788, 798 (1992) (internal

citations and quotations omitted).[3]

Unlike Dalton, the present action was not brought pursuant to the Administrative

Procedures Act ("APA"). The requirement for final agency action, however, as a prerequisite to

judicial review still applies. In Chicago & Southern Air Lines v. Waterman S. S. Corp., 333 U.S.

103 (1948), plaintiff sought review, not pursuant to the APA, of a recommendation of the Civil

Aeronautics Board to the President who made the final decision. Finding the recommendation

unreviewable, the Court stated that "administrative orders are not reviewable unless and until they

impose an obligation, deny a right or fix some legal relationship as a consummation of the

administrative process." Id. at 112-13, citing Rochester Tel. Corp. v. United States, 307 U.S. 125,

131 (1939). In both Waterman and Dalton the Supreme Court has clearly precluded federal court

review of non-final agency action. Lacking final agency action, Plaintiff's claims in this action are

unreviewable and must be dismissed for lack of subject matter jurisdiction.


### III.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** for lack of subject matter

---

[3] Plaintiff relies on the opinion in Rendell. Having carefully reviewed that decision, the
Court respectfully disagrees with its analysis.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Preliminary Injuction (Doc.

No. 3) is **DENIED** as moot.


Dated this <u>7th</u> day of September, 2005.


<u>/s/ Jean C. Hamilton</u>
UNITED STATES DISTRICT JUDGE

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JON S. CORZINE, et al., | : | CIVIL ACTION NO. 05-4294 (MLC) |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| v. | : | |
| 2005 DEFENSE BASE CLOSURE & REALIGNMENT COMMISSION, et al., | : | |
| Defendants. | : | |

**COOPER, District Judge**

The plaintiffs brought this action on September 2, 2005, seeking, <u>inter alia</u>, a judgment declaring that the defendants violated the Defense Base Closure and Realignment Act ("BRAC") — 10 U.S.C § 2687, <u>et seq.</u> — by failing to remove the military base located at Fort Monmouth from the closure list, which was (1) compiled by the defendant Secretary of Defense Donald Rumsfeld ("the Secretary"), and (2) reviewed by the defendant 2005 Defense Base Closure & Realignment Commission ("the Commission"). (Compl., at 28-29.)  The plaintiffs now seek to enjoin the Commission from transmitting its report on the Secretary's initial recommendations ("the Report") to the President of the United States.  (Dkt. entry no. 6.)  The Court will deny the application and dismiss the complaint for lack of subject matter jurisdiction.

## BACKGROUND

### I.   The Parties

The plaintiffs — who are, among others, (1) elected officials from New Jersey, and (2) military personnel and their family members — (Compl., at 4-14) — seek to enjoin the Commission from transmitting the Report to the President.[1]  They seek also an expedited trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2) to resolve the issues presented here.  Specifically, they allege the Commission exceeded its statutory authority under BRAC in the following ways:

A.   When the BRAC Commission conditioned closure of Fort Monmouth upon the Department of Defense's (DoD) implementation of unspecified safeguards to avoid degradation of current programs and disruption to the Global War on Terror, the Commission failed to fully approve or fully disapprove the Fort Monmouth recommendation.  Such a "conditional closure" was not authorized or contemplated by the BRAC Act, and it runs counter to the BRAC Act's purpose of bringing clarity and finality to the base closure process.

B.   When the BRAC Commission added an amendment to the "conditional closure" directing the Secretary of Defense to submit a report to the appropriate congressional oversight committee regarding the status of the aforementioned safeguards, it re-inserted Congress back into the base closure process in a way that was neither authorized nor contemplated by the BRAC Act.  This, too, is directly contrary to the purpose of the BRAC Act,

---

[1] Richard J. Codey, Acting Governor of New Jersey, and the State of New Jersey filed an _amicus_ _curiae_ brief in support of the plaintiffs.

which went to great lengths to minimize
Congressional involvement in the base closure
process.

C.    After the BRAC Commission found that the
recommendation to close Fort Monmouth deviated
substantially from six of the eight final criteria
and the Force Structure Plan, it violated the BRAC
Act when it did not recommend removal from the
closure list.  The BRAC statute does not
contemplate conditional, "curative" changes that
are essentially entirely new recommendations.
Rather, where the BRAC Commission finds wholesale
substantial deviation from the criteria and the
Force Structure Plan, it is limited to the sole
remedy of removal from the list.  If, on the other
hand, the BRAC Commission want[s] to add a base to
the closure list, it must do so through the
statutorily mandated "adds" procedure.

D.    Lastly, even if BRAC Commission did not exceed the
scope of its congressionally delegated conditional
authority to "make changes" to DoD recommendations,
it still violated the law because the changes
recommended do not adequately address or
substantively cure the statutory deficiencies of
the recommendation.

E.    The 2005 BRAC Act requires all recommendations to
meet eight final criteria and comport with the
DoD's Force Structure Plan.  According to the BRAC
Commission's findings and amendments, Secretary
Rumsfeld's recommendation to include Fort Monmouth
on the closure list violated final criteria 1, 2,
3, 4, 5 & 7 and failed to comport with the Force
Structure Plan.  By failing to comply with the BRAC
Act's mandates, Secretary Rumsfeld violated the
law.  The result for Fort Monmouth was severe: had
the Fort not been added to the closure list
unlawfully by Secretary Rumsfeld, it would not
otherwise have been considered for closure, since
it was not place on the list via the BRAC
Commission's "adds" process.

F.    Section 2913(e) of the BRAC Act requires the
Secretary of Defense to consider costs that will be

3

> incurred by other non DoD federal entities located
> on military installations slated for closure or
> realignment.  Secretary Rumsfeld violated this
> provision of the law when he failed to follow this
> statutory mandate and consider the costs to the
> Veterans Administration, the FBI, and the Federal
> Emergency Management Agency (FEMA), all of which
> operate at Fort Monmouth.

(Pl. Br., at 18-19.)  The plaintiffs assert jurisdiction pursuant
to the federal question provision of 28 U.S.C. § 1331, the
mandamus provision of 28 U.S.C. § 1361, and the Declaratory
Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202.

The defendants, in response, contend that the plaintiffs
have no likelihood of success on the merits because their claims
"suffer from fatal justiciability flaws".  (Def. Br., at 12.)
They claim that the Court lacks subject matter jurisdiction — and
thus is precluded from reviewing the Report — under the holding
in Dalton v. Specter, 511 U.S. 462 (1994), and in light of the
"text, structure, and purpose" of BRAC.  Id. at 479.[2]

## II.  BRAC

The process by which military bases are selected for closure
and realignment is governed by BRAC.  The purpose of BRAC is "to
provide a fair process that will result in the timely closure and

---

[2]  The defendants also argue that (1) there is no ripe
controversy because the Report is a recommendation subject to
possible rejection, (2) the plaintiffs lack standing as they have
not alleged an actual injury, and (3) the challenges to the
Secretary's recommendations to the Commission are moot.  The
Court will not address these arguments, as will become clear
herein.

realignment of military installations inside the United States." 10 U.S.C § 2901.

The Secretary prepares first "[a] force-structure plan for the Armed Forces based on an assessment by the Secretary of the probable threats to the national security during the 20-year period beginning with fiscal year 2005." Id. at § 2912(a)(1)(A). The Secretary then reports on the infrastructure necessary to implement the plan. Id. at § 2912(a)(2). Based on this report, the Secretary certifies whether the need exists to close or realign military bases. Id. at § 2912(b)(1). The base-closure process terminates if the Secretary fails to provide such a certification. Id. at § 2912(b)(2). After this certification, the President must nominate eight people to serve as the "Defense Base Closure and Realignment Commission." Id. at § 2902. Failure to do so also terminates the closure process. Id. at § 2902(c)(1)(C).

The Secretary, assuming the required certification has been issued, must then recommend the bases to be closed and realigned. Id. at § 2914(a). Thereafter, the Commission holds public hearings on those recommendations. Id. at § 2903(d). After the hearings, under the current version of BRAC, the Commission must transmit a report "containing its findings and conclusions, based on a review and analysis of the Secretary's recommendations" to the President by September 8, 2005. Id. at § 2914(d)(1).

5

The President then reviews the Secretary's recommendations
and the Commission's report of the Commission, and prepares a
further report either approving or disapproving the Commission's
recommendations.  Id. at § 2914(e).  If the President disapproves
of the Commission's recommendations, the Commission has an
opportunity to revise the list and resubmit it to the President.
Id. at § 2903(e)(3).  If the President does not transmit the
revised report to Congress, the process is terminated for that
year.  If the President approves the revised list, it is passed
on to Congress for approval.  Id. at § 2903(e)(4)-(5).  If
Congress does not act on the report within 45 days of receiving
it, or by the adjournment of Congressional session during which
the report was transmitted, the Secretary must close and realign
the military bases as provided in the Commission report approved
by the President.  Id. at § 2904(b).  Both the President and
Congress have no authority to pick and choose parts of the report
to approve and disapprove.  The report must be approved or
disapproved as a single package.

### DISCUSSION

The plaintiffs bear the burden of demonstrating federal
jurisdiction.  See McCracken v. Murphy, No. 04-3454, 2005 WL
995510, at *1 (3d Cir. Apr. 29, 2005).  "Congress has the
constitutional authority to define the jurisdiction of the lower
federal courts, and, once the lines are drawn, limits upon

federal jurisdiction. . . must be neither disregarded nor
evaded." Keene Corp. v. United States, 508 U.S. 200, 207 (1993)
(citations and quotations omitted).  The Court may review an
action for the existence of jurisdiction, and to dismiss the
complaint if jurisdiction is lacking.  Fed.R.Civ.P. 12(h)(3).

The plaintiffs assert the Court has jurisdiction under the
DJA.  (Compl., at 4.)  That assertion is in error, as the DJA
"does not and cannot serve as an independent basis for federal
jurisdiction." TIG Ins. Co. v. Reliable Research Co., 334 F.3d
630, 634 (7th Cir. 2003).  See Neel v. Pippy, 247 F.Supp.2d 707,
712 n.2 (W.D. Pa. 2003) (stating same).  The DJA enlarges the
remedies available in federal courts, but does not expand the
scope of the Court's jurisdiction.  Skelly Oil Co. v. Phillips
Petroleum Co., 339 U.S. 667, 671 (1950) (emphasis added).  The
operation of the DJA is procedural, and it does not provide
independent grounds for federal subject matter jurisdiction.  Id.
The plaintiffs must look to another statute to provide a
jurisdictional basis for the cause of action at issue.[3]

---

[3] There is a recognized basis for jurisdiction sometimes
called a non-statutory review action, where a plaintiff seeks
judicial review of the legality of the conduct of a federal
executive branch officer in the absence of either a specific or
general statutory review provision.  See e.g., Chamber of
Commerce of the United States v. Reich, 74 F.3d 1322, 1327 (D.C.
Cir. 1996).  That principle may be the basis of the observation
by Justice Blackmun, concurring in Dalton, that judicial review
would be available for a "claim, for example, that the President
added a base to the . . . Commission's list in contravention of
his statutory authority." Dalton, 511 U.S. at 477-78.  We merely

BRAC does not provide the plaintiffs with an independent
basis for a cause of action and jurisdiction, nor does it provide
the Court with the power to exercise judicial review in this
instance.  The Supreme Court has recognized that:

> [w]hether and to what extent a particular statute
> precludes judicial review is determined not only from
> its express language, but also from the structure of
> the statutory scheme, its objectives, its legislative
> history, and the nature of the administrative action
> involved.

Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984).

The only instance in which BRAC expressly provides for
judicial review is in the limited context of objections as to the
National Environmental Policy Act of 1969 ("NEPA").  10 U.S.C. §
2909.  Further, such review is only available if initiated within
a certain time period.  This Court cannot articulate the
implication of this express provision better than Justice Souter
stated in his concurrence in Dalton:

> This express provision for judicial review of certain
> NEPA claims within a narrow time frame supports the
> conclusion that the Act precludes judicial review of
> other matters, not simply because the Act fails to
> provide expressly for such review, but because Congress

---

note this principle, but observe that Dalton is the appropriate
and controlling authority resolving the jurisdictional issue at
this stage in the BRAC process.  We also observe that although
the concurrence by Justice Blackmun in Dalton suggested the
availability of a "timely claim seeking direct relief from a
procedural violation" committed by the Secretary or Commission,
id. at 478. there is no such possibility here because this action
was brought a mere three court days before the September 8, 2005
statutory deadline for submission to the President.

surely would have prescribed similar time limits to
preserve its considered schedules if review of other
claims had been intended.

Id. at 483.   Also, beyond the express language of BRAC itself,

the text, structure, and purpose of the Act clearly
manifest congressional intent to confine the base-
closing selection process within a narrow time frame
before inevitable political opposition to an individual
base closing could become overwhelming, to ensure that
the decisions be implemented promptly, and to limit
acceptance or rejection to a package of base closings
as a whole, for the sake of political feasibility.
While no one aspect of the Act, standing alone, would
suffice to overcome the strong presumption in favor of
judicial review, this structure (combined with the
Act's provision for Executive and congressional review,
and its requirement of time-constrained judicial review
of implementation under NEPA) can be understood no
other way than as precluding judicial review of a base-
closing decision under the scheme that Congress, out of
its doleful experience, chose to enact.

Id. at 483-84.  While this Court recognizes that amendments have

been made to BRAC for the 2005 round of base closures and

realignments, the statutory amendments do not change this Court's

approach or conclusion.  The current version of BRAC maintains

the rigid step-by-step time schedule, temporary nature of the

Commission, requirement for prompt implementation, and inability

of the President and Congress to pick and choose parts of the

recommendations to approve and disapprove.  All these elements

reinforce the conclusion that BRAC does not provide for judicial

9

review here.[4]

**CONCLUSION**

This Court finds that it lacks subject matter jurisdiction here. The Court will deny the plaintiffs' application and dismiss the complaint. An appropriate order and judgment will be issued.

___s/ Mary L. Cooper___
**MARY L. COOPER**
United States District Judge

---

[4] The plaintiffs also assert jurisdiction under 28 U.S.C. § 1361, which states that the Court has jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But such relief is not available when the ultimate decision at issue lies — as it does here — within the discretion of the President. Dalton, 511 U.S. at 474. See Corus Group v. Int'l Trade Comm'n, 352 F.3d 1351, 1357 (Fed. Cir. 2003) (stating courts have no authority to review recommendation to President where President has complete discretion whether to act thereon).

The Court also notes a 1990 House Conference Report, which states that the actions taken pursuant to BRAC — particularly under 10 U.S.C. §§ 2903-2905 — are not to be subject to judicial review. H.R.Rep.No. 101-923, at 706 (1990), as reprinted in 1990 U.S.C.C.A.N. 3110, 3258.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROD BLAGOJEVICH, Governor of the State of Illinois, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  05-3190 |
| DONALD RUMSFELD, Secretary of Defense of the United States, et al. | ) ) ) ) | |
| Defendants. | ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Plaintiff Governor Rod Blagojevich's (Governor) Motion for a Temporary Restraining Order (d/e 24).  The Defendants are U.S. Secretary of Defense Donald Rumsfeld (Secretary) and the members of the United States Base Closure and Realignment Commission (Commission).  The Secretary recommended to the Commission that fifteen F-16 fighter planes currently assigned to the 183rd Fighter Wing of the Illinois Air National Guard, located in Springfield, Illinois, be realigned and transferred to a base in Indiana.  The Secretary also recommended the relocation or removal of positions of 185 full-time

personnel and 452 part-time personnel of the 183red Fighter Wing. The
Commission voted to approve the Secretary's recommendation. The
Commission is currently preparing a report which will include its approval
of the Secretary's recommendation regarding the realignment of the 183rd
Fighter Wing. The Commission must submit that report to the President
of the United States by September 8, 2005. The Governor claims that the
realignment of the 183rd Fighter Wing may not occur without his consent,
pursuant to 32 U.S.C. § 104(c) and 10 U.S.C. § 18238. The Governor asks
this Court to restrain the Commission and the Secretary from transmitting
to the President their recommendations regarding the realignment of the
183rd Fighter Wing.

The Supreme Court's decision in <u>Dalton v. Specter</u> compels this Court
to conclude that the Governor has no standing to bring this action. <u>Dalton</u>,
511 U.S. 462 (1994). This Court, therefore, must dismiss this case for lack
of subject matter jurisdiction.

This case arises from the current round of military base closings and
realignments under the Defense Base Closure and Realignment Act of 1990
(Act). 104 Stat. 1808, as amended, note following 10 U.S.C. § 2687.
Pursuant to the Act, the Secretary submitted his recommendations of base

closures and realignments to Congress and to the Commission.  The Commission then held public hearings and voted on whether to accept or reject each of the Secretary's recommendations.  The Commission approved the Secretary's recommendation for realignment of the 183rd Fighter Wing.  The Commission must now prepare a report.  The report will contain both an assessment of the Secretary's recommendation and the Commission's own recommendations for base closures and realignments.  That report must be submitted to the President on or before September 8, 2005.  10 U.S.C. §§ 2912-2913.

The President must then approve or disapprove, in their entirety, all of the Commission's recommendations.  If the President disapproves, the Commission must prepare a new report and submit it to the President.  If the President again disapproves, no actions proposed in the Commission's recommendations will occur.  If the President approves either the initial or the revised recommendations, the President must then submit the recommendations, along with his certification of approval, to Congress.  Congress may, within forty-five days after receiving the President's certification, enact a joint resolution of disapproval.  If the resolution of disapproval is passed, the Secretary may not carry out any of the

recommended closures or realignments; but, if the resolution of disapproval is not passed, the Secretary must carry out the recommended closures and realignments. 10 U.S.C. § 2913.

The 183rd Fighter Wing is part of the Illinois Air National Guard. As such, it is both a unit of a state National Guard and part of the larger National Guard of the United States. <u>See</u> <u>Rendell v. Rumsfeld</u>, 2005 WL 2050295(U.S. Dist. Ct. E.D.Pa., August 26, 2005) (detailed discussion of dual state-federal nature of the National Guard). The statutes defining the structure of this dual relationship give certain powers to the governors of the states. The Governor argues that two of these statutes, 10 U.S.C. § 18238, and 32 U.S.C. § 104(c), require the federal government to secure his consent before realigning the 183rd Fighter Wing.[1]

---

[1]Section 18238 states:

> A unit of the Army National Guard of the United States or the Air National Guard of the United States may not be relocated or withdrawn under this chapter without the consent of the governor of the State or, in the case of the District of Columbia, the commanding general of the National Guard of the District of Columbia.

Section 104(c) states:

> To secure a force the units of which when combined will form complete higher tactical units, the President may designate the units of the National Guard, by branch of the Army or organization of the Air Force, to be maintained in each State and Territory, Puerto Rico, and the District of Columbia. However, no change in the branch, organization, or allotment

The Governor notified the Secretary that he did not consent to the realignment of the 15 fighter planes and personnel.  He argues that, as a result, the Secretary acted illegally in recommending the realignment of the 183rd Fighter Wing and the Commission acted illegally in approving that recommendation.  He argues that those acts violated his rights as Governor of Illinois, and this Court should restrain the Secretary and the Commission from taking any further steps in violation of his rights.

Before considering the merits of the Governor's request, the Court must determine whether it has jurisdiction.  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).  This Court only has jurisdiction over cases and controversies.  U.S. Const. Article III.  A case or controversy exists only if the Governor has standing to bring the claims he asserts.  To establish standing, the Governor must allege that: (1) he has suffered an injury-in-fact that is concrete and actual or imminent, not conjectural or hypothetical; (2) a fairly traceable connection exists between the injury and the wrongful conduct; and (3) a likelihood exists that the requested relief will redress the alleged injury.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83,

---

of a unit located entirely within a State may be made without the approval of its governor.

103 (1998).

The Governor's allegations fail to show an injury-in-fact. The Governor alleges that the Secretary and the Commission have recommended a realignment that will violate the Governor's rights under § 104(c) and § 18238 by illegally realigning the183rd Fighter Wing without his consent. The Secretary's recommendation and the Commission's report and recommendations, however, did not, and will not realign the 183rd Fighter Wing. The Supreme Court has determined that the recommendations of the Secretary and the Commission in the base closing process are only preliminary recommendations to the President that have no legal effect:

> The reports submitted by the Secretary and the Commission … "carr[y] no direct consequences" for base closings. The action that "will directly affect" the military bases is taken by the President, when he submits his certification of approval to Congress. Accordingly, the Secretary's and Commission's reports serve "more like a tentative recommendation than a final and binding determination."

Dalton, 511 U.S. at 469, quoting Franklin v. Massachusetts, 505 U.S. 788, 798 (1992) (internal citations omitted). Sections 104(c) and 18238 do not require these subordinates to secure gubernatorial consent before making tentative recommendations to the President about realignment of National Guard bases. Thus, the Governor's allegations fail to demonstrate that the

Secretary or the Commission have injured him, or will injure him, by making these tentative recommendations.

The Governor relies on the Supreme Court's decision in <u>Bennett v. Spear</u> for the proposition that preliminary opinions of federal agencies can cause an injury-in-fact.  <u>Spear</u>, 520 U.S. 154 (1997).  In that case, the U.S. Fish and Wildlife Service issued a Biological Opinion on the impact of the Klamath Irrigation Project (Project) on certain endangered species of fish.  <u>Spear</u>, 520 U.S. at 159-60.  The Bureau of Reclamation modified its operation of the Project as a result of the Biological Opinion.  The plaintiffs were Oregon irrigation districts and ranchers that received water from the Project.  The Supreme Court held that the plaintiffs in that case had standing to challenge the Biological Opinion because, by statute, the Biological Opinion had a direct impact on the legal regime that governed how the Bureau of Reclamation managed the Project.  <u>Id.</u> at 178.

The Supreme Court, however, specifically stated that the situation before it in <u>Spear</u> was different from the base closing and realignment process under the Act.  The Court stated that the Secretary and Commission's recommendations under the Act, "were in no way binding on the President, who had absolute discretion to accept or reject them."  <u>Id.</u> at

178.  The Court in <u>Spear</u> continued: "Unlike the reports in . . . <u>Dalton</u>, which were purely advisory and in no way affected the legal rights of the relevant actors, the Biological Opinion at issue here has direct and appreciable legal consequences."  <u>Id.</u>  The <u>Spear</u> decision, thus, does not help the Governor.  Because the Supreme Court has decided that the Secretary and the Commission's recommendations to close a base in <u>Dalton</u> were "purely advisory" and "in no way affected the legal rights of the relevant actors," this Court must conclude that those recommendations in this case to realign the 183rd Fighter Wing have not, and will not, injure the Governor.  He has no standing at this point to assert the claims he filed because the act of transmitting the recommendations will not cause an actual, concrete injury to the Governor.

The Governor also relies on the <u>Rendell</u> decision.  This Court has reviewed the <u>Rendell</u> decision and respectfully disagrees with its interpretation of the Supreme Court's opinion in <u>Dalton</u>.  This Court is convinced that the <u>Dalton</u> case dictates the conclusion that these preliminary recommendations by the Secretary and the Commission do not cause injury to the Governor.  The President and Congress will decide whether any bases will be closed without the Governor's consent.  The

Court therefore declines to follow the <u>Rendell</u> decision.[2]

Governor Blagojevich also argues that the decisions of the Secretary and of the Commission effectively strip him of his statutory right to withhold his consent to the realignment of the 183rd Fighter Wing. This is not completely true. He may notify the President and Congress that he withholds his consent. He will have no recourse, though, should they approve the realignment without his consent. The Supreme Court has ruled that the final decision of the President in exercising his discretion in this regard cannot be reviewed by the courts. <u>Dalton</u>, 511 U.S. at 476-77. This outcome may not be as harsh as it seems, though, because Governor Blagojevich is asserting only rights created by federal statute.[3] Those rights may be modified or eliminated at any time by Congress and the President. Arguably, the President and Congress have elected to modify the Governor's rights through the base realignment process created by the Act. Regardless, the Supreme Court has clearly determined that the recommendations of the Secretary and the Commission are tentative recommendations that do not

---

[2]The Governor also argues that the decision in <u>Rendell</u> should operate as <u>collateral estoppel</u> to preclude the Defendants from relitigating matters decided in that case. Standing, however, is a jurisdictional issue. Subject matter jurisdiction cannot be created by waiver or estoppel. <u>Shaw v. Dow Brands, Inc.</u>, 994 F.2d 364, 371 (7th Cir. 1993).

[3]The Governor makes no constitutional claim.

affect anyone's legal rights, including the Governor's. The Governor, therefore, has not alleged an injury-in-fact and does not have standing.

THEREFORE, this action is dismissed for lack of subject matter jurisdiction. All pending motions are moot. The hearing on the Motion for Preliminary Injunction, previously scheduled for September 7, 2005, is canceled. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   September 6, 2005.

FOR THE COURT:

        s/  Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE