UNTIED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11821-GAO

W. MITT ROMNEY, in his official capacity as Governor of the Commonwealth of Massachusetts,
Plaintiff,

v.

DONALD H. RUMSFELD, in his official capacity as Secretary of Defense of the United States of America, THE DEFENSE BASE CLOSURE AND REALIGNMENT COMMISSION, ANTHONY J. PRINCIPI, in his official capacity as Chairman of the Defense Base Closure and Realignment Commission, and JAMES H. BILBRAY, PHILIP COYLE, HAROLD W. GEHMAN, JR., JAMES W. VINSON, JAMES T. HILL, LLOYD W. NEWTON, SAMUEL K. SKINNER and SUE E. TURNER, in their official capacities as members of the Defense Base Closure and Realignment Commission,
Defendants.

ORDER
September 8, 2005

O'TOOLE, D.J.

Plaintiff, W. Mitt Romney, in his official capacity as Governor of the Commonwealth of Massachusetts (the "Governor"), has brought an action for declaratory judgment and injunctive relief, challenging recommendations made by the Secretary of Defense and the Defense Base Closure and Realignment Commission (the "Commission") affecting the Otis Air National Guard Base in Barnstable, Massachusetts ("Otis"), which would include moving F-15 aircraft from Otis to the Barnes Air National Guard Base in Westfield, Massachusetts ("Barnes") and A-10 aircraft from Barnes to other States. Relying on both statutory and constitutional provisions – 32 U.S.C. § 104, § 10 U.S.C. 18238, and Article I, § 8, cl. 16 of the United States Constitution – the Governor

contends that the changes affecting the Massachusetts Air National Guard that are about to be formally recommended by the Commission may not be made without his consent. The Governor further says that he has notified Secretary Rumsfeld and Commission Chair Principi that he does not consent. Pursuant to the Base Closure and Realignment Act of 1990, 104 Stat. 1808, as amended, note following 10 U.S.C.§ 2687 (the "BRAC Act"), the Commission must transmit its final report to the President by this date, September 8, 2005. The Governor seeks a temporary restraining order enjoining the Commission from transmitting its final report to the President. For the reasons briefly outlined below, the Governor's motion for a temporary restraining order must be denied.

The defendants' principal arguments are that the legal controversy is not ripe and that the Governor lacks standing to complain of, and therefore to seek to enjoin, the Commission's delivery of its final report recommending changes affecting the Air National Guard units within Massachusetts because the delivery of the report to the President itself causes the Governor no injury for which redress may be given. It is not necessary on this occasion to decide finally all questions which may be fundamental to the viability of the present action, such as whether the Governor has standing or whether the claims are justiciable. The precise and limited issue that needs to be resolved as an urgent matter, given the imminent delivery of the report to the President, is whether the Governor has shown what must be shown to justify the entry of a temporary restraining order.

It is axiomatic that to induce a court to enter a temporary restraining order a plaintiff must demonstrate, at a minimum, a likelihood of success on the merits of his claim(s) and the prospect of immediate irreparable harm unless the restraining order is entered. See Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005); Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640

F.Supp. 1159, 1160 (D.Mass. 1986). The Governor has not satisfied either requirement, essentially for the same reason.

As a practical matter, it is undeniable that the Commission's submission of its final report and recommendations to the President is a significant event. Nonetheless, as the BRAC process has been explained by the Supreme Court, the submission of the report itself carries no direct or final consequences affecting the Massachusetts Air National Guard. See Dalton v. Specter, 511 U.S. 462, 469 (1994). "The action that will 'directly affect' the military bases . . . is taken by the President, when he submits his certification of approval to Congress." Id. (citation omitted). "Accordingly, the [Defense] Secretary's and the Commission's reports serve 'more like a tentative recommendation than a final and binding determination.'" Id. (citation omitted).

Under the BRAC Act, the President has the authority and the discretion to accept or reject the Commission's recommendation. "That the President cannot pick and choose among bases, and must accept or reject the entire package offered by the Commission, is immaterial. What is crucial is the fact that '[t]he President, not the [Commission], takes the final action that affects' the military installations." Id. at 470 (citation omitted).

Some of the issues presented in this action are novel and intriguing. It is not necessary to canvass or address them all at this time. The present issue is whether the plaintiff has demonstrated a likelihood (1) that his legal theories are meritorious and (2) that without the entry of a temporary restraining order his legal interest will suffer irreparable harm that outweighs (3) any harm either to the defendants' interests or (4) to the public interest. Since (as explained in Dalton) the submission of the Commission's report to the President itself has no conclusive effect, the plaintiff has failed to establish that the act of transmitting the report ought to be restrained.

The application for a temporary restraining order is, therefore, DENIED.


September 8, 2005                           \s\ George A. O'Toole, Jr.
DATE                                        DISTRICT JUDGE